MR. SPATZ. The principal issue in this appeal are on what basis the examiner rejected a single pending claim and whether in sustaining that rejection the board fashioned a new rejection as to which appellants never had an opportunity to respond. The examiner rejected the claim as obvious over two patents, one to POSIUCO and a second to NOAC. There's no dispute between the parties as to POSIUCO teaching the structure of a personal hygiene article which fully conforms to that in the claim. The only thing which POSIUCO didn't teach was the use of cold caustic extracted pulp in the personal hygiene article. For that, the examiner relied on NOAC. The examiner was quite clear in his rejection. He advised that NOAC disclosed a method for making fluff pulp capable of being used for personal hygiene articles due to its soft absorbing characteristics. He cited to a passage in NOAC and further went on to say that it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the invention of POSIUCO with a fluff pulp made by the method taught in NOAC and that doing so would provide an absorbent product containing fluff pulp material which is very soft, absorbent and easily saturated. This rejection is susceptible to only one interpretation. The examiner found that NOAC had made a fluff pulp. He did not say that NOAC had created a slurry or a mixture of pulp which could be turned into a fluff pulp. He said that NOAC had made a fluff pulp. What is the page of the appendix on which that quote appears? I have it but I can't put my finger on it. It's at 345. 345, thanks. However, this is simply not the case. A fluff pulp is used in the claim and in all of the prior art of record which discusses fluff pulp and the creation of personal hygiene articles says that fluff pulp is made by dry shredding, dry pulp and turning it into a fluffy article which is very similar to a cotton ball. In contrast, NOAC teaches putting his slurry of pulp and water into a beater and then depositing it into a paper making machine and pressing out a felt. I think it's obvious that there is no similarity between a felt and a cotton ball and that's the difference between the article which is required by the claim and the article made by NOAC. NOAC produced something which was akin to a piece of paper whereas the claim requires an article which is akin to a cotton ball. Moreover, NOAC's observation that his felt-like paper is more absorbent than ordinary craft paper does not make the felt that NOAC produces a fluff pulp nor does it suggest that NOAC's paper could be used to make a fluff pulp. Well, not the paper but the question is can the pulp be fluffed? Yes, clearly the pulp can be fluffed. In fact, that's what the applicants do. But the question is whether there's anything in NOAC that would suggest to one that you should take the fluff pulp that NOAC created, I'm sorry, take the pulp that NOAC created, the felt paper, and turn that into a fluff pulp. I think the way, at least I understand the board to a view of this, is that you don't look at the paper, you look at the intermediate product which is the pulp. That is the board's position. But the board is reinterpreting the examiner's rejection in a way which is not fairly suggested by the examiner. The examiner said that NOAC made a fluff pulp. The examiner said that NOAC teaches a method for making a fluff pulp. Further, the examiner in her answer went on to explain what she meant by saying that NOAC made a fluff pulp. And in her answer, the examiner said that beating a pulp in a slurry of water equated to fluffing. Well, fluffing and beating a pulp in a slurry of water are two very different things. Fluffing requires that you take a dry pulp and separate the fibers called individualizing the fibers of the pulp to make something which is soft and airy and like a cotton ball. Whereas NOAC does nothing like that. He beats pulp with water in a slurry, in a blender, and then deposits it into a papermaking machine and presses it out as a piece of paper. The piece of paper produced by NOAC bears no resemblance to a fluff pulp. And the board, in saying that the examiner's pulp, the slurry that he created, could be used to make a fluff pulp, is simply reading something into the examiner's rejection that the examiner didn't say. The examiner never even suggested anything like that. But the examiner didn't combine or relied on a combination of those two references. And it was clear where the shortcoming was in the primary reference and where the secondary reference was used to overcome that shortcoming. I agree with you that it was clear where the primary reference came up short. I mean, obviously where I'm going is that you are right that the board may have articulated the basis of the combination slightly differently, but does it constitute a new ground of rejection when the rejection based on a combination of those two references seemed to me to be pretty clear? I believe it does constitute a new ground of rejection, Your Honor. Look at it this way. It's the articulation of different reasoning? It's not simply a different reason. Nowak commented on the absorbency of a felt paper being made, compared it to another piece of paper. He said he had produced a product that was softer and more absorbent than other paper, and he compared a paper to a paper. But he disclosed the pulp, a particular kind of pulp. Okay, he disclosed the pulp, but in doing so, he did nothing to suggest the present invention. What he is about is avoiding the wet collapse of fluff pulp in a personal hygiene article. When fluff pulp is put into a diaper, it has a tendency when it gets wet, because it's a cotton ball, to collapse and turn into something akin to paper or certainly something much flatter. When it does that, it can hold no more liquid than the volume of the compressed paper. So you have an article which has very limited absorbency if the pulp collapses. What the prior art taught in Chatterjee and in other references which the examiner relied on is that the way you created a fluff pulp which didn't collapse when it got wet was subjected to chemical crosslinking. And chemical crosslinking keeps the pulp stiff, so when the fluff pulp gets wet, it doesn't collapse. It stays in its original volume and holds a great deal more liquid. That's what the prior art taught. And what applicants did was they recognized or discovered, either by accident or through science, that if you included cold caustic extracted pulp, which NOAC said was softer and more absorbent than other pulp, into a construct containing fluff pulp, it would resist collapse in a way that was similar to what chemically crosslinked pulp would resist collapse. Now there's nothing in NOAC that would suggest that the fluff pulp containing cold caustic extracted pulp is going to resist wet collapse, and that's the heart of this invention. What NOAC said is that if you make a felt out of cold caustic extracted pulp, it's going to be more absorbent than a paper made with a different type of pulp. Now how you go from one piece of paper is more absorbent than another, to you can use this cold caustic extracted pulp in a personal hygiene article and it won't collapse and it will maintain the same sort of volume that it would be the case if it was crosslinked. What is it that prevents it from collapsing, if it's not crosslinked? What turns out is that when you cold caustic extract pulp, it removes ligands and hemicellulose, which are sugars, from the fiber. The fiber becomes thinner and becomes curlier, very crinkly. When you put that crinkly fiber into a fluff pulp, the crinkly little fibers, although as NOAC points out that they're soft, are like little springs, and they beef up the structure of the fluff pulp and keep it from collapsing when it gets wet. That's how the inventors understand it. That's an inherent property of the fluff pulp?  Fluff pulp. But not one which anyone had recognized before and nothing which anyone would glean from reading NOAC. NOAC simply says that a paper made with a cold caustic extracted pulp is softer and more absorbent than a paper which is not made with cold caustic extracted pulp. Nothing which would suggest to anyone skilled in the art that you could take that same fiber and include it in an absorbent article containing fluff pulp and obviate the need for crosslinking, which is what was done previously. Okay. Let's hear from the office. Ms. Kelly. Good morning, your honors. May it please the court. I'd like to begin by addressing two of the things that appellant has said. One is that there was a new ground of rejection between the board and the examiner, and then the second is that NOVAC's intermediate did not contain a fluff pulp. First, there was no new ground of rejection between the board and the examiner. As the board specifically said in its original decision at page 438 and then reiterated in its decision on rehearing that they were relying on NOVAC for teaching a pulp, not the final wet-laid felt paper, but this intermediate, which appellant calls a slurry. And this was the same, and the board reiterated again in its ground of rehearing that they were both relying on NOVAC for teaching a fluffed wood pulp from that intermediate, as appellant calls a slurry. Now, appellant has said in their brief and again to this court, those of ordinary skill in the art would never view that slurry as being a fluffed wood pulp, that you must first dry that and then beat it a second time in the hammer mill. Beating it once with your caustic agents in the slurry doesn't create the fluffed wood pulp, that just creates a cold caustic-extracted pulp that you then must dry and re-fluff, re-run through the hammer mill. But that's not borne out by the record. The claim at issue here, claim 104, was actually copied by appellant from the Martin patent. The Martin patent, they were hoping to force an interference by copying that claim. If you look to the Martin patent, and it's in the record here at page 497, if you look to that patent from the middle on down of column 6, you'll see they describe cold caustic extraction and creation of this slurry just as NOVAC describes. But then, very tellingly, Martin goes on to say, starting at line 55 of column 6, the fluffed wood pulp may then be recovered from the treatment slurry and dried in either sheet form or free form. So it's not true that those of ordinary skill in the art maintain that you have to dry the slurry in the paper form or something and then re-fluff it again through a second run through a hammer mill. Martin, who they're hoping to provoke an interference with, Martin specifically refers to this, expressly refers to that, the wood pulp that's in that slurry as being fluffed. This reconfirms the examiner and the board's interpretation that what you had, that intermediate, contained fluffed wood pulp. And both the board and the examiner noted that NOVAC expressly teaches that one of ordinary skill in the art would know that you could stop at that intermediate point because they both found in the record at page 474, and this would be page 2 of the patent in the right hand column, it's an older patent so we don't have each individual column numbered. But if you look at the paragraph going from around line 21 to line 26, that this slurry can be conveniently shipped in the same way as the case of commercial wet pulp. So this is what the industry, this was known in the industry for a very long time that you didn't have to dry it first. It doesn't say that it's fluffed. This does not refer to it as fluffed, but Martin uses the same type of cold caustic extraction as the appellant and as NOVAC. Well that relates to whether there may or may not be appropriate to declare an interference, but in terms of this appellant's appeal, that's based on the subject matter that's in the record and it's prior art to this case. This is, Martin is in the record, Your Honor, and we're trying I think at this point to interpret what the prior art discloses. Both the board and the examiner found that when NOVAC talks, he doesn't use the word fluffed, but he talks anywhere in his patent, but he talks about swollen fibers that have been run to this hammer mill. And the examiner expressly found that beating something in a hammer mill or some other similar device, a Holland beater, the examiner expressly found that beating equates to fluffing. Sort of like when you beat a pillow, you fluff that pillow up. And now in their gray brief to this court and here standing before the court, appellant is arguing that, oh, you have to beat a dry product. And this is either a shift in argument or something that's being argued in their gray brief and now with a little more clarity than it was before the board, that this thing had to be dried before it was fluffed, or in the case where we have the slurry that's already been beaten once, re-beaten in order to produce a fluffed product. But the fact of the matter is that appellant is incorrect when appellant says, you have to dry this first before you fluff it. Because Martin is a piece of prior art that is in the record that they're hoping to provoke an interference with that says, specifically refers to this slurry. The same kind of slurry appellant makes, the same kind of slurry that Novak makes, and it's a fluffed wood pulp. It is unfortunate in some regards, I guess, that appellant did not raise that argument with that level of clarity to the board or that Novak uses the word swollen rather than the word fluffed. Well, there wasn't a basis of rejection before the board. So how could, with the argument, this particular argument was not raised by the examiner? The examiner specifically said that beating equates to fluffing. The examiner said that to appellant. Let me find. The examiner expressly said that to appellant at page 409 of the record, the examiner said. The appellant draws a distinction between wet beating and dry beating. But the claims, they don't draw that distinction in their claims. And they certainly didn't draw that distinction before either the examiner or the board with the level of clarity that they're doing now in their graverief and before this court. Before the board and the examiner, they were primarily arguing that you could never take the wet-laid felt of Novak, the final product, and put that into Pochaluko's fluffed absorbent core. Because Novak describes a flat product, not a fluffed product. But the board and the examiner said, we're not talking about the final product. We are talking about the intermediate. Specifically, I refer you to page A438 of the record. The examiner noted that it was the pulp of Novak, not the final paper product that would be used in Pochaluko. Second, one of ordinary skill in the art would know not to make the final paper product from the pulp if a fluffed material was called for. And they said this in response to Appellant's argument further up on the page that the felt paper of Novak did not contain a fluffed pulp. This, again, Appellant's argument has either shifted over time or be done with... Novak doesn't describe a fluffed product. Pardon me? Novak doesn't describe a fluffed product. So you're saying that we should assume that since it could be fluffed, therefore it's described. Is this a theory? No, Your Honor. That is not what I'm saying at all. The board, the examiner, I'm saying to you now, Novak's intermediate is fluffed. You had fibers that were run through a hammer mill. And as the examiner said, that sort of beating that goes through a hammer mill or a Holland beater, that equates to fluffing. And we believe that there is substantial evidence in Novak that when Novak's describing swollen fibers, that he's talking about fluffed fibers. And unfortunately, we're sort of in a position now where we're having to respond to an argument that's slightly different than what was before the board that Appellant is making. But the board's interpretation that beating equates to fluffing, certainly in contrast to everything Appellant has said in their brief briefing to this court today, is correct. Martin and Novak teach that slurry. Novak's word, swollen. Martin's says fluffed. I don't mean to add another layer of complexity to this. But claim five of Novak talks about soaking the fibers until the pulp is substantially completely puffed. Is puffing the same as fluffing? They're talking about, there's swelling, and you have the swelling from the cold caustic extraction, or puffing, and then they're beating. You can beat it out. Basically, the hammer mill just isn't beating. They have blades in them. And so you're chugging. It's grinding at the same time. Is the hammer mill something used to cause fluffing, or is the hammer mill something used to cause sheeting, as in the formation of paper or layers of pellet? No. No, and that's not even what Appellant is arguing here. The hammer mill grinds and increases surface area and air it grinds. It's basically like putting something in a blender, wet or dry. And Appellant is contending that you have to take a dry product and put it through the hammer mill to shred it. What the board and the examiner said is no. You already have something that is already shredded and fluffed in the slurry. You could just dry that directly. You don't have to first convert it into a paper, or a paperboard, or a felt, or however you choose to call it, and then re-shred that. Where in Novak does it talk about fluffing? Novak never expressly uses the word fluff. Novak uses the word pulp, and Novak uses the word swollen. Pochaluko especially uses the word fluff. Martin uses the word fluff. But as the examiner said, running through this hammer mill creates the fluffing. But Novak doesn't talk about running it through a hammer mill, does he? Novak talks about a holland beater, which is the same thing as essentially running something through a hammer mill. Because if you look at the specification, it talks about you can run something through a hammer mill or any other sort of attrition device. But aren't those the devices that cause the pulp to become sheeted? No. What you'll see in Novak is they take this intermediate slurry that has been run through a hammer mill and is liquid. To get the final product, the paper product, then it goes into sort of a vat. You drain out as much of the liquid as possible, and then you basically run it through heated rollers to sort of make this felt or paper. And what reference is that? That's in Novak. Novak says suitable for sheeting, and Novak makes sheets. Novak doesn't say he makes a fluff. He says he makes sheets. That's his final product. The board and the examiner were not relying on the final product. They were relying on the intermediate. The board expressly said that in its decision. The board said it wasn't relying on that final wet-laid felt. The board said that again in its decision on rehearing. If we find that Novak falls short of disclosing or suggesting a fluffed pulp, that the only thing it discloses is a pulp and, of course, the final sheeted product, then what effect does that have on what our decision should be? You can still affirm because Pulch-O-Luco teaches the fluff. And, in fact, Appellant— But now are we into what Appellant is arguing, a new rejection? I would say— Should Appellant have the right to come back and say, well, okay, now you're relying on a different reference for the fluffing aspect of this, and I have a right to be able to— If that was the case, that you were to agree with Appellant on that point, in contrast to Martin's teaching, I would say at that point we'd still have an affirmable decision here because it would be harmless error because Pulch-O-Luco teaches fluffing. In fact, Appellant's specification acknowledges that absorbent cores of most of these products are fluffed. But Pulch-O-Luco teaches fluffing with chemical cross-linking, right? Pulch-O-Luco doesn't state—just says I have a fluffed absorbent core. Pulch-O-Luco is silent as to whether there's cross-linking or not. It's Chatterjee that has a cross-linked core. Pulch-O-Luco is open to any sort of core. Let me ask you one other question, just to make sure I understand. Your view is the pulp—is it the pulp of Novak that is the fluff pulp before it gets converted into paper? Correct. That that is fluffed, and that interpretation is supported by Martin. But then the board says Novak's pulp is a pulp which may be fluffed for use in an absorbent core, and that seems to contemplate—and I'm reading from 437, the first—go about line 4 or line 5, which seems to suggest that it isn't yet fluffed. Right at the end of the carryover paragraph on 437. See where I am? It's page 8 of the board's opinion. Oh, the paragraph going over to the next page. Yeah, the carryover from 436 to 437. I'm sorry, I wasn't clear. 436 to 437. The examiner expressly noted that Novak's pulp material would provide an absorbent product containing fluff material. It's the last sentence, or the next to last sentence. It says, after being extracted, beaten, and washed, the Novak pulp is a pulp which may be fluffed for use in an absorbent core. It suggests to me that the Novak pulp is not at that point prior to fluffing and not a fluffed pulp, because that was seen to be the board's conclusion. I would say that that's contradicted by the board's later statements regarding Novak's intermediate being fluffed, and also their decision on rehearing. Okay. Any more questions? Any more questions for Ms. Kelly? Thank you, Ms. Kelly. Thank you. I'll be very brief. The solicitor is correct. Marden is in the record. However, Marden was never applied by the examiner. Marden is only in the record because appellants wish to illustrate that a claim of essentially the same scope as they're pursuing has already been patented by the patent office. And to point out that appellants had good reason for requesting that their appeal be reinstated after the examiner withdrew the original final rejection, appellants were very interested in getting a patent because they were being injured by the Marden patent, which had already issued. The solicitor also suggests that appellants have somehow changed their position with regard to what is fluffing. That's actually not the case. Latham explains at page 53 what constitutes fluffing, and fluffing constitutes dry shredding, not wet mixing. That's also consistent with the explanation of what is fluffing in Chatterjee, which was the original reference cited by the examiner. Somewhere between Chatterjee's application and the citation of Nowak, the examiner seems to have forgotten that fluffing means dry shredding. It's also been suggested that a hammer mill and a mixer are somehow the same. They're not. A mixer is used to take water and pulp, which is, I guess, cellulose from a tree, blend them together to make a uniform slurry, which can be deposited into a paper press. The reason why you mix them together is you want the paper to be of uniform thickness throughout. You mix the pulp and the water together in a blender, dump it onto a paper machine, and press it out to get paper which is of uniform consistency. A hammer mill is something quite different. A hammer mill is something where you take pulp fibers which have come from the slurry and which have been dried, and which are probably very similar to Nowak's paper, and pull the fibers apart to create something that looks like a cotton ball. You feed into the hammer mill something which looks like a felt, and out comes something that looks like a cotton ball. A hammer mill and a mixer really have no similarity, other than that they both involve mechanically moving parts. What is it, I have forgotten now, that the examiner discussed Posseuilhiko. What's missing from Posseuilhiko? Posseuilhiko doesn't mention or refer to the use of cold caustic extracted pulp. In our view, one skilled in the art looking at Posseuilhiko would never think that it would be possible to avoid chemical crosslinking by using cold caustic extracted pulp, since Posseuilhiko makes no mention of cold caustic extracted pulp. And the other reference relied on by the board and by the examiner, Nowak, says nothing which would lead one to that combination either. I have nothing further. Any more questions? Thank you, Mr. Spatz and Ms. Kelly. The case is taken under submission.